## Case No. 3,588.

### DAVENPORT v. ALABAMA & C. R. CO.

[2 Woods, 519.] [1]

Circuit Court, S. D. Alabama. Dec. Term, 1875.

RAILROAD RECEIVERS—JUDGMENTS FOR PERSONAL INJURIES—PRIORITY OVER BONDS.

A person who has recovered judgment against the receivers of a railroad for injuries received by him while traveling as a passenger upon the road is not entitled to payment out of the earnings of the road, or the proceeds of its sale in preference to the first mortgage bondholders, unless it is so provided by the order of the court placing the road in the possession of the receivers.

[Cited in Turner v. Indianapolis, B. & W. Ry. Co., Case No. 14,260; Central Trust Co. v. East Tenn., V. & G. R. Co., 30 Fed. 897; Easton v. Houston & T. C. Ry. Co., 38 Fed. 14; Finance Co. v. Charleston, C. & C. R. Co., 46 Fed. 509.]

This was a petition filed by [T. H.] Davenport against the receivers of the Alabama & Chattanooga Railroad, in the principal cause, which was entitled John C. Stanton and others, Trustees, v. the Alabama & Chattanooga Railroad Company and others. [Case No. 13,296; Id. 13,297.] The original bill was filed by the trustees to foreclose the first mortgage on the road, and other property of the railroad company. The court made a decretal order, appointing Lewis Rice and Wm. J. Haralson receivers, and placing the road in their possession. The substance of this order will appear in the opinion of the court. While Rice and Haralson were in possession as receivers, the petitioner Davenport was injured while traveling on the road as a passenger. He got leave of this court to sue the receivers in their official capacity, in a state court, to recover damages for the injuries received by him. He recovered a judgment for $3,000, and then filed the present petition against the present receivers, who were the successors of Rice and Haralson, for an order of the court, that

[1] [Reported by Hon. William B. Woods, Circuit Judge, and here reprinted by permission.]

his judgment be paid out of the earnings of the road, or the proceeds of its sale, as a part of the expenses of executing the trust. The road had not paid running expenses, and the proceeds of the sale fell far short of paying the first mortgage bonds.

Thomas H. Herndon and John Little Smith, for petitioner, cited Kerr, Rec. 164; Meara v. Holbrook R. Co., 20 Ohio St. 137; Potter v. Bunnell, Id. 150.

John A. Elmore, representing the trustees of the first mortgage, and Robert H. Smith, representing the bondholders, contra.

WOODS, Circuit Judge. The claim is for $3,000 and costs, on a judgment rendered as damages, for an injury received by Davenport while traveling as a passenger on the Alabama & Chattanooga road, when it was run by the receivers Rice and Haralson. The question is, whether such claim can come in as a lien on the fund, superior to the first mortgage in existence, when the right to damages accrued. It is too clear for argument, that if the road had been run by the president and directors when the injury was sustained, no such claim could have priority. The party would have traveled over the road, taking the risk of the ability of the company to respond, just as every man, who obtains a right or contract, does so with the risk of the ability of the party to answer to him. The receivers of the court were merely appointed to act instead of the president and directors, except so far as the orders of the court otherwise direct, and the liability stands on the same footing as if it had been created by the president and directors, unless a higher right can be assigned to it under the orders of the court. The object of appointing a receiver is to take care of the property for those entitled to it, and he has no powers except such as are conferred upon him. In other words, he acts as special agent by appointment of the court. Kerr, Rec. 3, 46. A receiver stands like an administrator who certainly can by no act override existing liens, and he is under no personal liability to respond except for his own personal neglect. Meara v. Holbrook R. Co., 20 Ohio St. 137. This case is cited for petitioner. It holds that there is no personal liability on the receivers, and that the liability must be discharged from funds in their hands, but by no means settles that liens on such funds are subordinated to such later liabilities. The estate in the hands of a receiver must bear the loss, but only such estate as is liable for the loss, and not the estate of one who holds a paramount lien. Lord Eldon, in Norway v. Rowe, 19 Ves. 153, declares that the appointment of a receiver does not prejudice the rights of a prior mortgagee, and then uses this language: "And the constant habit of the court upon such a motion (to appoint a receiver) is not to look at mortgagees farther than to take care that they are not preju-

diced." In Redfield on the Law of Railways (volume 2, p. 363), the proposition is thus distinctly stated: "The appointment of the receiver does not operate to derange the priority of legal or equitable liens. The money in his hands is in the custody of the law, for whoever can make title to it, and when the party entitled to the estate is ascertained, the receiver will be his receiver."

The case, therefore, comes down to this: Does the decree of Circuit Justice Bradley, of August 26, 1872, or the decree of foreclosure of January, 1874, establish such liens? And it may be stated thus: Has Justice Bradley departed from a well settled rule of law, to create a lien not essential to running the road, and not necessary for increasing, either directly or consequently, the rights of the first mortgage bondholders, for the protection of whose rights the appointment was made? It is clear that such a lien is not one of the incidents to running the road, nor was its creation necessary to procure traffic and travel; nothing of the kind is intimated in the application for a receiver, and no such view or idea is presented in the order, an analysis of which will make this clear. The order of the circuit justice recites that the property is deteriorating in value, and being wasted and scattered and destroyed, whereby the security of the first mortgage bondholders, and the interest of all other persons then concerned in said property are subject to hazard, danger and sacrifice. It then recites the impossibility to dispose of the property in its then present condition without great sacrifice, and the proposal and agreement of the parties * * "that a receiver or receivers shall be appointed in this cause, to take charge of said property and put the same into proper condition for its preservation and disposition, for the mutual benefit of all parties interested therein. And whereas, in view of all the evidence and admissions of the parties, the court is satisfied that a receiver or receivers ought to be appointed to take charge of the entire property and manage the same, and to put the same in order and repair, to prevent the entire destruction thereof:" Therefore it was ordered that receivers be appointed: 1. To take possession, recover and receive the property covered by the first mortgage. 2. To sue for damages done to it, etc. 3. To put the property in repair, and to complete the road, and to procure rolling stock, etc., necessary to operate it, "and to operate the same to the best advantage, so as to prevent the said property from further deteriorating, and to save and preserve the same for the benefit and interest of the said first mortgage bondholders, and all others having an interest therein." Then follows the creation of the prior lien, and it is for money raised or advanced "for the purposes aforesaid." The order then, in words, provides: "That any funds raised by said receivers, by loan as aforesaid, or re-

ceived by them from any other source, as such receivers, which may not be employed or required for the purposes above mentioned, or allowed to them by the court for their services as such receivers, shall be paid by them into this court, for the use of the said first mortgage bondholders, as their interest or principal shall become due." We here have an explicit declaration that no money is to be used by the receivers except for the purposes above mentioned. Now is it necessary, in order to operate the road, that any man entitled to his action for injuries should have a prior lien on the road for such damages? And is the lien to be created by inference, and on conjecture that the creation of such a lien was necessary in order to operate the road? As a fact, it is known that almost every railroad in the United States is under mortgage, and that every such one is operated without being subject to a lien for such liabilities. There is not one word in the inducements recited for the appointment of the receivers, or in the purposes named for which they were appointed, which, by the remotest inference, countenances the creation of a prior lien.

The exercise of power by a court to displace liens can only be sustained on the ground of actual necessity, and surely there can be no necessity to append, as an incident to running a railroad, a lien for damages that displaces existing contracts. The party has a right to be paid from the fund remaining, after satisfying prior rights. He has a right to be allowed his claim to be paid from an excess remaining. He has the same right against the property which he could have had if the road had been run by the president and directors when his right accrued, and none other.

Turning to the decree of foreclosure of January, 1874, we see how clearly the court viewed the order of the circuit justice in the light presented. It devotes the proceeds of sale, first, to necessary expenses incident to the execution and due prosecution of the trust created in behalf of the mortgage, etc. But it cannot be said that the giving of a prior lien to a traveler for damages is an expense incident to the execution of the trust which was created in behalf of the mortgagees. Such a claim is in fact no "expense" at all, in the proper or ordinary sense of the word. It is a liability resulting secondarily from operating the road and that is all. The petition must be dismissed.