EASTON *et al. v.* HOUSTON & T. C. RY. Co. *et al.*, (PEMBERTON Co., Intervenor.)

*(Circuit Court, E. D. Texas.* March 15, 1889.)

RAILROAD COMPANIES—INSOLVENCY AND RECEIVERS—CARRIERS—LOSS OF GOODS.
  A claim by the consignee of goods against a railroad company as a common carrier, for the value of goods lost by fire while in possession of the carrier, and before the road is placed in the hands of a receiver in a foreclosure suit, is not entitled to a priority, before the claims of the bondholders.

In Equity.   On exceptions to master's report.
*Gresham & Jones,* for intervenor.
*Farrar, Jonas & Kruittschnitt,* for receiver.

PARDEE, J.   This intervention, filed June 29, 1887, is by the Pemberton Company, a corporation created and existing by and under the laws of Massachusetts, and having its domicile at the town of Lawrence in that state, against the Houston & Texas Central Railway Company, as a common carrier, for the value of freight lost while in transit over its road.   The intervenor seeks to have its claim declared a charge upon the net earnings of the defendant company's road, and, if need be, upon the *corpus* of its estate in the hands of the receivers appointed in the above cause, superior to the equities of the bondholders, whose contract liens are sought to be enforced in the above suit; and to that end the said receivers and the complainants and defendants to the original bill are made parties to this proceeding, is so far as the assertion of the petitioner's rights may affect them or the interests they represent.   Intervenor lays its damage at $4,000.   The facts, as alleged in the petition, and as reported by the master, are, briefly, as follows:   On the 12th day of September, 1884, there were shipped, by Robertson & Co., from Ennis, Tex., a station upon the Houston & Texas Central Railway, 100 bales of cotton, the property of the intervenor, the Pemberton Company, for which the railway company executed to Robertson & Co. a bill of lading for the delivery of the cotton to their order at Lawrence, Mass., which bill of lading, at the time of the shipment of the cotton, was by Robertson & Co., the consignees therein named, indorsed in blank and delivered to intervenors, the cotton being the latter's property and the shipment thereof for its benefit.   On the 14th of September, 1884, and while the cotton was in transit over said railway, and in the custody of the railway company, under its contract of carriage, 40 bales thereof were destroyed by fire; the cotton so burned being of the aggregate weight of 20,132 pounds, and of the value, at the time, of 11 cents per pound, or, in the aggregate, $2,214.52.   On the 23d of February, 1885, Benjamin G. Clarke and Charles Dillingham, under an order made February 20, 1885, in equity cause No. 185, styled "Southern Development Co. *et als. v.* Houston & T. C. Ry. Co.," went into possession of the road and other properties of the said railway company, and so continued until

such properties passed into the custody of the present receiver in this cause under an order of court of date May 26, 1886, where they have since continuously remained.

The master finds and reports that intervenor's demand against the defendant railway company accrued within six months prior to February 20, 1885; that the earnings from the property of the defendant company in the custody of the court have been, since February 23, 1885, in excess of what has been necessary to defray all expenses incurred during such period in the care, management, and operation thereof, and in excess of what also have been adjudged in said cause equitable charges upon such earnings, superior to the equities of said complainants, to an extent at least equal to intervenor's demand against defendant company; but also finds that there are interventions upon other demands against such company pending in this court, which, if held to be entitled to equitable priority over complainants, would be more than such excess to a greater amount than intervenor's said demand. The record in the above cause (No. 198) discloses the fact that since the road and other properties of the defendant company have been in the custody and under the management and control of the receivers, at least $600,000 of the net earnings during such period have been expended by the said receivers in the payment of interest accrued on the bonds held by the said complainants, in the erection and completion of costly depot buildings, in fencing right of way, and in otherwise permanently improving and bettering the said properties. The master, upon the foregoing facts, concludes and finds as a matter of law that the said claim of the Pemberton Company is not an indebtedness of such a character as entitles the said intervenor to payment thereof either from the income or the *corpus* of the estate in preference to the contract liens of complainants, and that the intervenor is not entitled to the relief sought by it as against the funds or the properties of the defendant railway company in the custody of the receivers in this cause; and he recommends that it be decreed accordingly, and that the petition of intervenor be dismissed.

The questions arising upon the exceptions to the master's report are stated by counsel for intervenor as follows:

"*First*, whether or not a claim by the consignee, or his assignee, against an insolvent railroad company as a common carrier of goods, for the value of freight lost within six months next before the company's road and other properties passed into the possession of a receiver appointed in a suit for foreclosure of a mortgage given to secure the company's bonded indebtedness is enforceable against the net earnings in that officer's hands, as a charge superior to the equity of the bondholders; and, if yea, then, *second*, whether such a claim is not enforceable against the *corpus* of the estate in the possession of the receiver, prior to the claims of the bondholders, where there are no such funds, or an insufficiency thereof, by reason of the fact that they have been applied to the payment of interest accrued on the mortgage debt, or to the lasting and valuable improvement or betterment of the mortgaged property."

It is not considered necessary to specifically answer either one of these questions. A debt of a railroad company arising out of the loss by

fire of goods while in possession of said railroad company as a common carrier is generally, and perhaps properly, classed as an operating expense; but, when presented against an insolvent railroad company over four months after the railroad property is placed in the hands of a receiver in a foreclosure suit, and urged as a lien upon the income of the property earned by the receiver, it is necessary to discriminate such a debt from debts arising for labor, supplies, equipment furnished for and necessary for keeping up the railroad as "a going concern." "There is authority for holding—in fact it is practically decreed by the supreme court of the United States—that debts contracted by a railroad corporation, as a part of the necessary operating expense, for labor and supplies, or for necessary equipment or improvement of the mortgaged property, are privileged debts entitled to be paid out of the current income, if the mortgage trustee takes possession, or if a receiver is appointed in a foreclosure suit. *Fosdick* v. *Schall*, 99 U. S. 235; *Burnham* v. *Bowen*, 111 U. S. 776, 4 Sup. Ct. Rep. 675. And if current earnings are used for the benefit of mortgage creditors before current expenses are paid, the mortgage security is chargeable in equity with the restoration of the fund, which has thus been improperly applied to their uses. General creditors of a railroad corporation, which includes those claiming damages for negligence in operating the railway, have never been held as having any privilege on the income of the property, * * * but there are many cases to the effect that no such privilege or equity exists. *Davenport* v. *Receivers*, 2 Woods, 519; *In re Manufacturing Co.*, 4 Fed. Rep. 873; *Hiles* v. *Receiver*, 14 Fed. Rep. 141; *Hervey* v. *Railway Co.*, 28 Fed. Rep. 169; *Olyphant* v. *Steel Co.*, Id. 729; *Trust Co.* v. *Railway Co.*, Id. 871." See *Trust Co.* v. *Railroad Co.*, 30 Fed. Rep. 895. In the case of *Davenport* v. *Receivers*, cited above, Mr. Justice WOODS said:

"It cannot be said that the giving of a prior lien to a traveler for damages is an expense incident to the execution of the trust which was created in behalf of the mortgagees. Such a claim is, in fact, no 'expense' at all, in the proper or ordinary sense of the word. It is a liability resulting secondarily from operating the road, and that is all."

The case of *Trust Co.* v. *Railway Co.*, cited above, was a case identical, except in point of time, with the one now in hand. In all the cases that I have examined, where debts arising before the receivership have been allowed as prior in equity to the claim of the bondholder on the earnings during the receivership, the underlying principle is that the debt, when incurred, operated in a direct way to the advantage of the mortgage holders; and in all the cases that I have examined debts arising for damages growing out of the transportation of passengers and freight have been classed as general debts, except in relation to traffic balances due other roads at the time a receiver was appointed, and such traffic balances have been put upon the special footing that the payment of the same operated as a specific advantage to the property. "Many circumstances may exist which may make it necessary and indispensable to the business of the road and the preservation of the property for the receiver to

pay pre-existing debts of certain classes out of the earnings of the receivership, or even the *corpus* of the property, under the order of the court, with a priority of lien. Yet the discretion to do so should be exercised with very great care. The payment of such debts stands *prima facie* on a different basis from the payment of claims arising under the receivership, while it may be brought within the principle of the latter by special circumstances. It is easy to see that the payment of unpaid debts for operating expenses accrued within ninety days, due by a railroad company suddenly deprived of the control of its property due to operatives in its employ, whose cessation from work simultaneously is to be deprecated in the interest both of the property and of the public, and the payment of limited amounts due to other connecting lines of road for materials and repairs, and for unpaid ticket and freight balances, the outcome of indispensable business relations, where a stoppage of the continuance of such business relations would be a probable result in the case of nonpayment, the general consequence involving largely also the interests and accommodation of travel and traffic, may well place such payments in the category of payments to preserve the mortgaged property, in a large sense, by maintaining the good will and integrity of the enterprise, and entitle them to be made a first lien." *Miltenberger* v. *Railroad Co.*, 106 U. S. 286, 1 Sup. Ct. Rep. 140. The exception to the master's report in this case will be overruled, and the report will be confirmed; the decree to be entered, however, will dismiss, the intervention without prejudice to any rights that intervenor may have to proceed as a general creditor against the Houston & Texas Central Railway Company.