PITTSBURGH, C., C. & ST. L. RY. CO. v. RUSS.

(Circuit Court of Appeals, Seventh Circuit. October 2, 1893.)

No. 76.

1. CARRIERS OF PASSENGERS—CONDITIONS OF TICKET—CONSTRUCTION.
    Acceptance of a mileage ticket which is expressed to be upon conditions that "the purchaser agrees to sign his name in presence of conductor each time before detachment is made," and that, "unless the proper signature is given, this ticket is forfeited," does not constitute an agreement that the conductor may decide for the holder, as well as for the company, whether the holder is the purchaser named in the ticket.

2. SAME—WRONGFUL EJECTION OF PASSENGER—REMEDY.
    A passenger who is wrongfully ejected from a train by the conductor, on the claim that he is not the person named in his ticket, is not limited to an action for breach of contract, but may sue the company in tort.

3. SAME—TRIAL—INSTRUCTIONS.
    In an action by a passenger for a wrongful ejection from a train, an instruction to the effect that if he resisted the conductor's efforts to eject

him, and such resistance increased the nervous trouble from which he was suffering, "he cannot recover any damages on account of such increase of said trouble, and his resistance must be considered in mitigation of the plaintiff's damages," is objectionable, as requiring the jury to give defendant a double advantage, by refusing plaintiff any damages on account of injury caused by his resistance to the conductor, and also by considering that resistance in mitigation of the damages otherwise allowable.

4. SAME—EXEMPLARY DAMAGES.

A railroad company is not liable for exemplary damages on account of the malice, wantonness, or oppression of its conductor in ejecting a passenger from a train. Railroad Co. v. Prentice, 13 Sup. Ct. Rep. 261, 147 U. S. 101, followed.

5. SAME—INSTRUCTIONS.

The error of instructing the jury that the company is liable for exemplary damages in such case is not cured by the statement that, in the opinion of the judge, the conductor was not malicious, wanton, or oppressive in his conduct, since the judge's opinion on the facts is not binding on the jury.

6. SAME—RATIFICATION BY COMPANY.

Where a conductor uses unnecessary force in ejecting a passenger supposed to be personating the owner of a mileage ticket, the fact that the company has issued instructions to its conductors that "regulations regarding the acceptance of mileage tickets for passage must be strictly enforced, without fear or favor," and that, "if they find mileage tickets have been transferred, they must lift such tickets, collect full fare, and report the transaction," does not render the company responsible for the wanton act of the conductor.

7. SAME.

Nor is the company rendered liable therefor by the fact that its general ticket agent was upon the train, and that the conductor conferred with him about the ticket, where it is not shown that such agent had authority over the conductor, or that he attempted to influence his action.

In Error to the Circuit Court of the United States for the District of Indiana.

Action by Charles A. Russ against the Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company for personal injuries. Plaintiff obtained judgment. Defendant brings error. Reversed.

Statement by WOODS, Circuit Judge:

The defendant in error was the plaintiff below. The substance of his complaint is that he was wrongfully, wantonly, and forcibly expelled by the conductor from a passenger train of the plaintiff in error, which he had entered at Louisville, Ky., for the purpose of being carried to Indianapolis; that in payment of his fare he presented to the conductor a mileage ticket, which was still good for 500 miles or more, and, in the presence of the conductor, signed his name upon the mileage strip, to be detached, as required by one of the conditions of the ticket, but that the conductor, denying his identity and the genuineness of the signature, took up the ticket, and upon the refusal of the plaintiff to pay fare in money or leave the train when it had arrived at Jeffersonville, Ind., laid hands upon him, and removed him by force. The plaintiff, testifying in his own behalf, gave this account of the expulsion: "He simply lifted me up, and he says, 'Is that your baggage on the seat?' I says, 'It is,' and he took hold of the baggage, and pushed me ahead of him to the front part of the coach, and there I sat down in a seat on the same side of the car,—a little short seat that faces the car; I think next to the window. Then he took my valise out and umbrella, and put them on the depot platform, and came back with the brakeman, and without saying anything, only wanting to know if I was going to pay my fare, and I told him 'No,' and he grabbed hold of me, and pulled me or pushed me out onto

the platform, and down the steps, onto the depot platform." It does not appear that more force was used than was necessary to effect the removal, and no bodily harm was inflicted upon the plaintiff unless it was, as it is alleged to have been, by way of "a nervous shock, bringing upon him again the nervous prostration and disorder from which he had previously been suffering," and "rendering him sick and incapable of work for several weeks thereafter, and necessitating the employment of a physician," etc. By force of conditions annexed to it, the plaintiff's ticket was not transferable, and, if presented by any other person, was to be forfeited. Another condition was expressed in these words: "The purchaser agrees to sign his name, in presence of conductor, on the back (close to the top) of mileage strip each time before detachment is made, and the signature must appear but once on each detachment. Unless the proper signature is given, this ticket is forfeited." The defendant company had issued to its conductors the following instructions: "The regulations regarding the acceptance of mileage tickets for passage must be strictly enforced, without fear or favor. Conductors must be particular to know that each person presenting a nontransferable signature mileage ticket is the veritable person named on the same, and they must adopt every special and reasonable method for ascertaining whether or not mileage tickets are presented by original purchasers. They must require each person presenting a mileage ticket to identify himself thoroughly by his signature, and conductors must compare the signature, and if they find mileage tickets have been transferred and are presented by other than the original purchasers, or the parties who properly identify themselves, they must lift such tickets, collect full fare, and report the transaction in the usual manner. Disregard of this order in any particular whatever will subject the offending conductor to dismissal from the service."

The court refused to give the jury the following instructions, asked by the plaintiff in error: "When the plaintiff purchased and accepted the ticket in question, in the use of it for passage on defendant's train, he was bound by all the conditions of the annexed contract, and all reasonable rules which the company might make for the government of its employes in respect to the use of such ticket for passage on defendant's trains. Under the conditions of the contract, and the reasonable rules of the company in respect to the use of the ticket, it was made the duty of conductors of defendant's trains to determine the question, when the ticket was presented for passage, whether or not the plaintiff was the purchaser or owner of the ticket. If, in the performance of that duty, the conductor of the train in question, in good faith, decided that the plaintiff was not the purchaser and owner of the ticket, and refused to accept the same for his passage, but took it up, and demanded that the plaintiff pay his fare or leave the train at Jeffersonville station, it was the duty of the plaintiff to pay his fare, if he had the money, or leave the train at said station, without requiring the conductor to eject him therefrom; and, if you find that he refused to do either, and the conductor ejected him at said station, using no more force than was necessary, then the plaintiff is only entitled to recover the value of the unused portion of the ticket, and the damages sustained, if any, by his detention at Jeffersonville until the next train. When a passenger is rightfully on a train, and is about being ejected therefrom, it is not necessary for him, in order to protect and preserve his rights as such passenger, to resist the conductor in his efforts to eject him, or to compel the conductor to use force to remove him from the train. In such case his rights would be just as complete if he left the train under protest. So if you find that the plaintiff resisted the conductor's efforts to eject him, or required the conductor to use force to do so, and that such resistance or refusal to leave the train aggravated or increased the nervous trouble under which he claims to have been suffering, he cannot recover any damages on account of such aggravation or increase of said trouble, and his resistance to the efforts of the conductor must be considered by you in mitigation of the plaintiff's damages."

The court, of its own motion, gave the following instructions: "It having been admitted by defendant's counsel that the plaintiff was the owner of the ticket in question at the time of his expulsion from the train, and entitled

to be carried thereon on said train, the plaintiff is entitled to recover such proximate damages for his expulsion from the train as will fairly and fully compensate him for the wrong done him by his expulsion. In assessing the plaintiff's damages, you may consider all the circumstances connected with his ejectment from the train as affecting his business, his health, and his peace of mind, and assess such damages as will fairly and fully compensate him for his loss of time, if any, and for his physical and mental suffering or injury caused by such ejectment. In cases of this sort, where the ejectment of the passenger is wrongful, and is done maliciously, wantonly, or with oppression, in addition to the compensatory damages, the passenger would be entitled to recover punitive or exemplary damages. But it is the opinion of the court from the evidence in this case that the expulsion of the plaintiff by the defendant's conductor was neither malicious, wanton, nor oppressive. It seems to me from the evidence that the conductor acted in good faith, believing that he had the right to put the plaintiff off the train. But, while this is the opinion of the court, it is a question for the jury to determine from all the evidence in the case whether the plaintiff's ejectment from the train by the conductor was attended with malice, wantonness, or oppression. And, if you determine from the evidence that it was, you have a right, in addition to what you may find the plaintiff entitled to recover to compensate him, to assess such damages as a punishment, or by way of an example to the defendant, as you believe from the evidence the circumstances of the ejectment would fairly warrant."

S. O. Pickens, for plaintiff in error.

A. J. Beveridge, for defendant in error.

Before WOODS and JENKINS, Circuit Judges, and GROSSCUP, District Judge.

WOODS, Circuit Judge, (after making the foregoing statement.) We do not assent to the proposition that, by accepting the mileage ticket with its special conditions, the defendant in error agreed that any conductor to whom he should present the ticket might decide for him, as well as for the company, whether or not he was the rightful holder. There is nothing expressed nor fairly to be implied from the conditions to that effect. As the representative of his company, acting under such rules as it has prescribed for him, a conductor, in collecting fares or tickets "necessarily concedes or rejects the right of the passenger to ride." He must determine whether or not money offered him is genuine, or, if it be a ticket or pass, he must decide whether it is valid, or for any reason is not available to the holder; and if he decides incorrectly, to the passenger's injury, the company will be answerable in damages. Bish. Noncont. Law, § 1095. And there is no good reason why the purchasers of tickets like that in question should be subject to a different rule.

It is insisted that the defendant in error should have sought his remedy in an action for a breach of the special contract, and not in an action of tort; but it is well settled that in such cases the action may be in either form, at the election of the plaintiff. Cooley, Torts, 90, 91; Railroad Co. v. Fitzgerald, 47 Ind. 79; Reese v. Telegraph Co., 123 Ind. 294, 24 N. E. Rep. 163; Railway Co. v. Hurst, 36 Miss. 660.

The second of the instructions asked and refused, even if sound in theory, is objectionable, because upon a strict construction it

would require the jury to give the defendant in the action a double advantage, by refusing the plaintiff anything on account of injury brought upon himself by resisting the conductor's effort to eject him, and also by considering that resistance in mitigation of the damages otherwise allowable.

Upon the question whether or not a passenger may resist by force an unwarranted expulsion from a railway train or other public conveyance, and be entitled to compensation for injuries, which, but for that resistance, he would not have suffered, the decisions are not in complete accord. In Railroad v. Connell, 112 Ill. 295, the supreme court of Illinois held, in harmony with prior decisions of that court, that a passenger who resists a wrongful removal "cannot recover for the force used by the conductor in putting him off, when no more force is used than necessary." Recognizing the right of the party so injured to recover, besides the amount of direct pecuniary loss, "reasonable damages for the indignity of being expelled from the train," the court, in support of its view of the question, among other things of evident if not conclusive cogency, said:

"When the appellee was notified by the conductor that his ticket was not good and would not be received, it was his duty to leave the train in a peaceable manner, and hold the company responsible for the consequences, rather than resist or undertake to retain his place on the train by force. A train crowded with passengers—often women and children—is no place for a quarrel or a fight between a conductor and a passenger, and it would be unwise and dangerous to the traveling public to adopt any rule which might encourage a resort to violence on a train of cars. The conductor must have the supervision and control of his train, and a demand on his part for fare should be obeyed, or the passenger should in a peaceable manner leave the train, and seek redress in the courts, where he will find a complete remedy for any indignity offered and for all damages sustained."

But in English v. Canal Co., 66 N. Y. 457, it was held that the passenger "was clearly justified in resistance to the extent necessary to prevent his being ejected;" and in Railway Co. v. Wolfe, 128 Ind. 347, 27 N. E. Rep. 606, that "he had the right to make reasonable resistance, as he did, by holding onto the seats until he was forced loose and taken from the cars." This last expression is in substantial harmony with the decision of the supreme court of the United States in New York, etc., R. Co. v. Winter's Adm'r, 143 U. S. 60, 73, 12 Sup. Ct. Rep. 356, where it is said:

"If he was rightfully on the train as a passenger, he had the right to refuse to be ejected from it, and to make a sufficient resistance to being put off to denote that he was being removed by compulsion and against his will."

In respect to the measure of damages, the court erred in instructing that the jury might allow vindictive or punitive damages if it found that, in removing the plaintiff from the train, the conductor's action was attended with malice, wantonness, or oppression. In the case of Railroad Co. v. Prentice, 147 U. S. 101, 13 Sup. Ct. Rep. 261, decided since the trial of this case, it was held that a railroad corporation is not liable to exemplary or punitive damages on account of illegal, wanton, and oppressive acts of its conductors or other subordinate agents. The decision rests upon

the principle, applicable alike to corporations and individuals, that "no man should be punished for that of which he is not guilty;" and, consequently, that it is enough that the principal is responsible for the actual consequences of wanton or malicious conduct of an agent within the line of his employment, and not beyond that, unless he has been in some way particeps criminis.

It has been suggested that the conduct of the conductor in this instance had the sanction of the railroad company, because of the instructions which had been issued to conductors in respect to mileage tickets, and because the general ticket agent of the company was present upon the train, and assented to the conductor's action. The instructions referred to do not seem to us to have been objectionable. While enjoining upon conductors diligence to prevent improper use of mileage tickets, they require nothing inconsistent with the rights of the passenger, and contain no warrant or even suggestion that, in enforcing the conditions of the ticket or the regulations of the company, the conductor should proceed in a wanton or oppressive manner. While it appears that the general ticket agent of the company was upon the train, though not in the car from which the plaintiff was ejected, and that the conductor conferred with him about the plaintiff's ticket, it is not shown that he had authority over the conductor or attempted to dictate or influence his action towards the plaintiff. Besides, if any question was to be made of the ticket agent's participation in the expulsion, or of the company's responsibility otherwise for the wantonness or malice of the conductor, it should have been submitted to the jury for decision upon the evidence. This court cannot review questions of fact in a case at law.

It is also urged that the erroneous instruction should be deemed harmless, considering the amount of the verdict, because the jury was told that, in the opinion of the court, the conductor was not malicious, wanton, nor oppressive in his conduct towards the plaintiff, but acted in good faith, and it is not to be presumed that the jury went contrary to that opinion. In the federal courts the opposite theory prevails, it being well settled "that a judge of a court of the United States, in submitting a case to the jury, may, in his discretion, express his opinion upon the facts; and that, when no rule of law is incorrectly stated, and all matters of fact are ultimately submitted to the determination of the jury," such "expressions of opinion are not reviewable on writ of error." Rucker v. Wheeler, 127 U. S. 85, 93, 8 Sup. Ct. Rep. 1142, and cases cited. The error of law cannot be cured by an expression of opinion upon the question of fact concerning which the law is announced, because the jury is not bound by, and presumably will not follow, the court's opinion concerning the fact if the weight of evidence is to the contrary. The verdict was for $1,000, and it is insisted, but we cannot say judicially, that there was assessed no more than just compensation for the injury which the plaintiff suffered.

The judgment is reversed, at the costs of the appellee, with instruction that a new trial be granted.