CENTRAL TRUST CO. v. EAST TENNESSEE, V. & G. RY. CO.

(District Court, E. D. Tennessee, N. D. August 27, 1895.)

1. NEGLIGENCE—PROXIMATE CAUSE—DELAY BY RAILWAY COMPANY IN DELIV-
ERING GOODS.

Goods were shipped over the E. Ry. to plaintiff on May 18th. Between
that time and June 5th, plaintiff, having been advised of the shipment, in-
quired several times for the goods, but was told by the agent at his sta-
tion that they had not arrived. On Saturday, June 5th, plaintiff again
inquired for the goods, and was again told by the agent that they had not
arrived; but, on personal investigation, he found them in the station. It
being too late to remove them on that day. plaintiff left them to be re-
moved on Monday. On Sunday, June 6th, the station and its contents,
including plaintiff's goods, were destroyed by fire, without fault of the
railway company. *Held,* that the negligence of the railway company in
failing to deliver the goods was the proximate cause of their loss, and that
the railway company was liable for their value.

2. CARRIERS—SOURCE OF OBLIGATIONS—LIABILITY TO PASSENGERS OR SHIPPERS.

The liabilities of a carrier of passengers or freight, who has entered into
contract relations with passengers or shippers, depend not only on his con-
tract, but also, in part, on the obligations imposed by law, as a matter of
public policy; and an action may be brought against the carrier, either
upon the contract, or for negligent omission of a duty imposed by law,
independently of the contract, or for an injury done to person or property,
as the case may be.

3. RAILROAD COMPANIES—DAMAGES IN OPERATING ROAD—PRIORITY OF JUDG-
MENT AND MORTGAGE—TENNESSEE STATUTE.

A judgment against a railroad company for damages for the loss of
property, caused by the negligent omission of the railroad company to
deliver goods promptly to the consignee, in consequence of which they
were destroyed by a fire in the company's station, is one for damages
done to property in the operation of the railroad, within the statute of
Tennessee (Laws 1877, c. 12) providing that no railroad company shall
have power to give a mortgage valid as against a judgment for such
cause.

This was a suit by the Central Trust Company against the East
Tennessee, Virginia & Georgia Railway Company for the foreclosure
of a mortgage. One James intervened, asking judgment against the
railroad company for the loss of certain property, and claiming pri-
ority for such judgment over the mortgage. The special master to
whom his petition was referred reported in favor of the intervener.
The railway company and the trust company excepted to his report.

Ingersoll & Peyton, for creditor.

Henderson, Jourolman, Welcker & Hudson, for defendant and
Trust Co.

CLARK, District Judge. James intervenes in this foreclosure
suit, and asserts a claim against defendant company for the value
of goods lost in the destruction by fire of defendant's depot at Mossy
Creek, June 6, 1892. Priority of payment out of the proceeds aris-
ing from sale of the mortgaged property is claimed against the lien
of the mortgage under the act of the general assembly of 1877. The
goods were sold on order, and shipped from Knoxville, Tenn., May
18, 1892, to intervener, at Mossy Creek, Tenn. An invoice of these
goods was sent by seller to intervener by mail on same day the goods

were shipped.    The goods reached their destination May 19, 1892, and were deposited in defendant's depot or warehouse, and remained there until destroyed by fire as stated.    During the interval between the arrival of the goods and the fire, the consignee sent on three different occasions for the goods, and was informed by the agent that the goods had not been received.    Finally, on the evening of June 5th, intervener was at the depot on other business, and again asked if the goods had arrived, and was informed by the same agent that they had not.    Thinking the delay was strange, the consignee undertook an examination for himself, and found the goods in the depot, almost concealed by straw and other material.    This was late in the afternoon, and the consignee was not prepared to take the goods home.    He accordingly went away, intending to return for the goods early Monday morning.    On Sunday, the next day, the depot, with its contents, was consumed by fire.    The fire is not shown to have resulted from the defendant's negligence, and the primary liability of the carrier depends on whether its negligence unnecessarily exposed the goods to the ravages of the fire.

It is set up in the answer to the petition that the agent had given notice to consignee of the arrival of the goods, but this would be inconsistent with his repeated declarations that the goods had not arrived.    There is no proof of this fact, and the agent's gross inattention to his duty, in not knowing what he should have known, is such as to forbid any presumption that he discharged his duty in any respect, if ordinarily such presumption arose, in a case like this. The notice referred to is that required by statute (Mill. & V. Code, § 2788).    In view of the ruling in Butler v. Railroad Co., 8 Lea, 33, the question whether notice was given or not does not change the result of any issue in this case.    The special master reports in favor of the claim, and the defendant railway company and the trust company except.    So far as the defendant railway company is concerned, the facts of this case are in all essential respects similar to those in Railway Co. v. Kelly, 91 Tenn. 699, 20 S. W. 312.    Judge Caldwell, speaking for the court, gives the reasoning, and states the ground on which the liability rests in such cases, with great clearness, as follows:

"The fire and the loss may have had different causes.  The fire destroyed the goods, but it does not follow that the cause of the fire and the cause of the loss to plaintiff were one and the same, in legal contemplation.  They may have been entirely different.  The failure to deliver the goods when demanded did not cause the fire, but it did cause the loss, in such sense that they would not have been lost without the failure.  Had the defendant delivered the goods, they would have been removed, and the loss averted.  The neglect and wrongful detention of the goods, and that alone, exposed them to the fire; and, but for that detention, they would not have been destroyed, though the fire did occur.  Thus it becomes obvious that the negligence of the railway company was the proximate cause of the loss.  The causal connection between the failure to deliver the goods and the injury to the plaintiff is complete."

Upon the authority of Railway Co. v. Kelly, judgment is allowed against the defendant railway company for the value of the goods, with costs incident to the intervention.    It remains to determine whether this judgment is one of the class provided for by the act of

1877, c. 12, § 3, against which the lien of the mortgage is invalid. So much of the act as affects the matter now under consideration is as follows:

"And provided further, that no railroad company or corporation shall have power under this act, or any of the laws of this state, to create a mortgage or other kind of lien on its property in this state, which shall be valid and binding against judgments or decrees, and execution therefrom, for timbers furnished or work and labor done on its road, or for damage done to persons and property in the operation of its railroad in this state."

The court in this case is concerned only with the last clause of the provision,—"or for damages done to persons and property in the operation of its railroad in this state." Counsel for the trust company insist that the act applies only to judgments in actions in tort, where the damages result from an injury directly done, with force, whereas in the case at bar the suit is necessarily upon the contract of shipment, for a breach thereof; and in support of the latter proposition the case of Railroad Co. v. Neal, 11 Lea, 270, is relied on. The opinion by Judge Freeman is brief, and may be given in full:

"The facts are that the plaintiff delivered this bale of cotton, with several others, to the railroad agent, who gave receipt of the company, to be shipped to Mosby, Hunt & Co., of Memphis, Tenn. The cotton was not shipped, but probably stolen from the platform, no watchman or guard being kept over it while on the platform after delivery. The only question contested is whether the statute of limitations bars plaintiff's claim. If the statute of three years applies to the case as presented, it is conceded the suit cannot be maintained. If six years, it is then conceded the action can be sustained, and the defendant is liable. This is not an action for injury to personal property, nor for detention or conversion of the same, which is barred in three years by section 2773 of the Code. It is for damages, or for breach of the contract to ship the cotton to Mosby, Hunt & Co., and comes under section 2775,— "actions on contracts, not otherwise provided for, shall be barred within six years."

It is entirely conceivable that if the shipper could not assert and prove an injury to the cotton, or a loss or destruction, by some act of negligence by the carrier, his only remedy was upon the contract, for failure to deliver the cotton. The opinion is to be read and understood with reference to the facts of the particular case decided. It is clear that the court did not decide that the contract, in such case, furnished the full measure of the defendants' obligation, nor that the shipper's only remedy would be upon the contract, where a contract exists. And the statute does not admit of any interpretation based on such proposition, nor upon the distinction between a suit upon the contract and one in tort, although the suit would very generally be of the latter kind. For, whenever the common carrier is brought into contract relations with either a passenger or shipper, the law, at once, as matter of public policy, imposes on the carrier certain obligations and liabilities, which do not depend on the particular contract at all. Indeed, these imposed duties are primary obligations. This doctrine has often been announced by law writers and judges in different forms, and its truth is obvious enough from a simple statement of the proposition. Railroad Co. v. Swift, 12 Wall. 262; Railroad Co. v. Derby, 14 How. 468; Pollard v. Railroad Co., 101 U. S. 223; Ray, Pass. Carr. p. 19, § 3, and cases; Tayl. Priv. Corp. §§ 350, 351, and cases cited. And these obligations, thus im-

posed by law from motives of public policy, the carrier cannot limit or modify, except by consent of the person dealing with such carrier, and then not to an extent without limit.    The carrier cannot, for example, validly stipulate for immunity from liability for loss resulting from negligence.    This is now fully established by leading cases of the highest authority, such as Railroad Co. v. Lockwood, 17 Wall. 357; Railway Co. v. Wynn, 88 Tenn. 320, 14 S. W. 311; Railway Co. v. Sowell, 90 Tenn. 19, 15 S. W. 837; Transportation Co. v. Bloch, 86 Tenn. 392, 6 S. W. 881; Inman v. Railroad Co., 129 U. S. 128, 9 Sup. Ct. 249; The Edwin I. Morrison, 153 U. S. 211, 14 Sup. Ct. 823. The carrier's obligations being in part defined by the contract, and in part imposed by law, regardless of the expressed contract, a count upon the contract contained in the bill of lading may be united in the same declaration with a count in tort for negligence in the loss of the goods shipped.    Railroad Co. v. Soper, 8 C. C. A. 341, 59 Fed. 879.    And an action against two railway companies for personal injuries resulting from their negligence is an action ex delicto, although the declaration shows that plaintiff held a ticket for transportation on the railroad, which ticket, of course, constitutes a contract, to the extent of its stipulations.    Railroad Co. v. Laird, 7 C. C. A. 489, 58 Fed. 760.    So a passenger wrongfully ejected from a train by the conductor, on the claim that he is not the person named in his ticket, is not limited to an action for breach of the contract. Railway Co. v. Russ, 6 C. C. A. 597, 57 Fed. 822.    There is nothing in the case of Railroad Co. v. Neal, 11 Lea, 270, in conflict with what is here said.    The shipper, then, for a loss, may sue in assumpsit, upon the contract, or in case, for negligent omission of a duty imposed by law, independently of the contract, or for an injury done to the property, as the facts of the case may be.    The existence of a contract therefore imposes no limit on the kind or character of the suit which may be brought.    This is determined by the nature of the injury suffered by the shipper or passenger.    Of course, reference is here made to the form of action only as illustrating the proposition announced,—that rights and obligations grow out of every transaction with the carrier beyond those stipulated in the specific contract itself.    Forms of action in this state were long since abolished by the Code (Mill. & V. § 3440), so far as concerns any question of pleading or practice.    The contract imposing no limit on the right to sue the carrier for an omission of duty, or an injury done, regardless of the terms of the contract, there is, of course, no restriction, on account of such contract, against the passenger or shipper, in his effort to show that his claim is one of the class defined and protected by the act of 1877.    To bring a judgment within the limited class defined by the act, it must be—First, for damages done to the person or property; and, second, "in the operation of its railroad in this state."    The statute has been before the courts only in the cases of Frazier v. Railway Co., 88 Tenn. 138, 12 S. W. 537; Id., 139 U. S. 288, 11 Sup. Ct. 517; and Railroad Co. v. Evans, 14 C. C. A. 116, 66 Fed. 816.    The only one of these cases bearing upon the point now considered is that last cited, in which, in the progress of the opinion, Judge Lurton comments on this statute as follows:

"The claim of Kratzenstein was for damages in detention of freight shipped over its line of railway. There is no evidence as to the character of the damages sustained. If the goods perished or were injured in transit through this state, Kratzenstein would seem to be within the saving of the statute, as having a claim for 'damages done * * * to property in this state.' There are two objections to this claim: First. It is not shown that Kratzenstein's property was damaged in the operation of the railway. If his loss was not due to an actual injury to his property, then he has not made out a case of 'injury to property,' within the meaning of the act of 1877. Second. It is not shown that any injury was done his property in the operation of the road within this state. If his damages were sustained at some point on the line, but in another state, the claim is not within the act. Kratzenstein alleges that his loss was 'for a delay at Chattanooga.'. The answer only admits that his judgment was for damages for 'detention on some part of its line of railroad.' There is no evidence as to where he sustained his loss, or as to whether his damages were to the goods in shipment, or for a decline in the market, or loss of a profitable contract by reason of delay. One who seeks to avail himself of a proviso limiting the operation of a general power must bring himself clearly within the exception."

It is true that a point in the construction of the statute could hardly be considered as definitely settled by what is said, and that the language is guarded; but this is characteristic of a really able and critical judge, and only adds value to the opinion as far as given. It is clear from what is here said, as well as the terms of the act itself, that it is not material whether the claim is for damages directly done, or damages suffered in consequence of negligence in any form.

It is next insisted by the able counsel for the trust company that according to the doctrine of Butler v. Railroad Co., 8 Lea, 32, and Railway Co. v. Kelly, 91 Tenn. 699, 20 S. W. 312, the damages did not occur "in the operation of the railroad," but while in custody of defendant company as a warehouseman. What the court decided in those cases was that when the freight arrives at the point of destination, and is deposited in the carrier's depot, the liability of the company as common carrier ceases, and the liability thereafter is that of a warehouseman, involving the duty of ordinary care. The court did not consider, and clearly did not decide, that the use of the depot was not a part of the operation of the railroad. The statute is to be construed in the light of the actual facts and circumstances of the subject to which it relates. These depots, and their use at the principal stations, are just as essential to the operation of a railroad as any other part of the equipment. This is well known to be so, and the facts which make it so need not be stated. The operation of the railroad is not confined to the movement of its cars, but includes the use of its depots and all appliances, until delivery to the consignee is complete, and the duty of the company terminated. In Easton v. Railway Co., 38 Fed. 12, Judge Pardee said:

"A debt of a railroad company, arising out of the loss by fire of goods while in possession of said railroad company as a common carrier, is generally, and perhaps properly, classed as an operating expense; but when presented against an insolvent railroad company over four months after the railroad property is placed in the hands of a receiver in a foreclosure suit, and urged as a lien upon the income of the property earned by the receiver, it is necessary to discriminate such a debt from debts arising for labor, supplies, equipments furnished for, and necessary for keeping up, the railroad, as 'a going concern.'"

Following, and giving full effect to the ruling in, Railway Co. v. Kelly, I hold that the destruction of consignee's property resulted from the negligence of the railway company; and the judgment, in my opinion, is one for damages done to property, within the class protected by the act of 1877. Views of the statute entertained by leading members of the bar are so divergent that I deemed it a fit occasion for stating at some length the court's opinion. The opinion is limited strictly to the facts which call for judgment.