## PENNSYLVANIA CO. v. LENHART.

(Circuit Court of Appeals, Seventh Circuit. January 6, 1903.)

No. 910.

1. CARRIERS—EJECTION OF PASSENGER—BREACH OF CONTRACT.

Plaintiff held a mileage ticket, good on defendant's railroad, which provided that it must be presented at the ticket office at the starting point, where the agent would issue a mileage exchange ticket for the desired trip in exchange for coupons from the book. It also provided that conductors might issue such exchange tickets, where the holder took the train at a station where there was no ticket office, or where such office was closed. Plaintiff presented his book to the agent at a station, and desired an exchange ticket, but the agent was not supplied with such tickets, and promised to explain such fact to the conductor. Plaintiff got on board, and presented his book to the conductor, who refused to give him an exchange ticket, and on plaintiff's refusal to pay fare ejected him at the next station. The ticket office there was closed, and plaintiff called the conductor's attention to such fact, and desired to again enter the train, but was refused. *Held*, that such action was a breach of the contract on the part of defendant, which rendered it liable in damages for plaintiff's wrongful ejection.

2. SAME—DUTY TO PAY FARE TO PREVENT THREATENED WRONGFUL EJECTION.

Plaintiff was not required to pay his fare when demanded and trust to its recovery by suit for the purpose of saving defendant from the consequences of its threatened breach of contract if he did not, but, having presented a legal ticket, was entitled to stand upon his rights under the contract.

3. SAME—ACTION FOR DAMAGES—EVIDENCE.

In an action to recover damages for such breach of contract and wrongful ejection it was error to permit plaintiff to testify to transactions and conversations between him and a ticket agent after his ejection or between him and the conductor of the succeeding train, such evidence not being relevant to the issues.

4. SAME.

A railroad company is liable in damages, without notice or demand, for the action of a conductor in wrongfully ejecting a passenger, where the conductor acted without malice, and in an action to recover such damages evidence of negotiations between the parties for a settlement is not admissible on the theory that it shows a ratification by the company of the conductor's action.

In Error to the Circuit Court of the United States for the Northern Division of the Northern District of Illinois.

Lenhart brought this action to recover damages for ejection from a train and for refusal to allow him to re-enter. He was the holder of a mileage book issued by the Pennsylvania and other railroad companies jointly. The second clause of the mutual contract between Lenhart and the railroad companies read as follows: "That this ticket is not good for passage on trains, but must be presented at ticket office at starting point, where the agent will issue in exchange for mileage coupons a mileage exchange ticket, good only for continuous passage on train to be designated

thereon, commencing on date stamped on back thereof, and will detach in consecutive order one coupon for each mile or fraction thereof, except that for any distance less than five miles not less than five coupons will be detached. Conductors of trains may issue such exchange tickets upon surrender of coupons from this mileage ticket when the owner of the mileage ticket takes a train at a station where there is no ticket office, or where the ticket office is closed; or will detach and accept mileage coupons to the terminal point of his run only, without issuing exchange ticket; and it will then be necessary for owner of mileage ticket to obtain exchange ticket of ticket agent at said point as provided for above, otherwise this ticket will not be accepted for passage from point referred to on that trip." October 8, 1897, Lenhart desired to ride on the Pennsylvania Railroad from Tiffin to Toledo, Ohio. The agent at Tiffin had no exchange tickets. August 21, 1897, the Pennsylvania Company had instructed all its agents that a change had been made in the form of mileage tickets issued by it; and the agent at Tiffin, by inadvertence, had sent to the proper general office of the company not only all the exchange tickets of the company's own form, but also those applicable to joint mileage books like Lenhart's. Down to October 8, 1897, the company had failed to supply the agent at Tiffin with the necessary exchange tickets. Lenhart presented his mileage book, containing sufficient coupons, and asked for an exchange ticket to Toledo. The agent was unable to furnish it, and explained why. Lenhart thereupon claimed the right to ride by surrendering coupons on the train conformably to clause 2 of the contract, and requested the agent to explain the situation to the conductor when the train arrived. This the agent agreed to do. Lenhart testified that he saw the agent speak to the conductor, but did not hear what was said, except the agent's remark, "That is the man," as he pointed out Lenhart to the conductor; and that he got upon the train in their presence without objection. The agent and conductor testified that all that took place between them was that the agent asked the conductor if he had exchange tickets for joint mileage, and the conductor answered, "Yes." On the train the conductor refused to accept mileage coupons, and gave as his reason, "I got positive instructions only a few days ago not to accept any mileage on trains." Lenhart then read to the conductor clause 2 of the contract, stated that the company had failed to provide him with an exchange ticket at Tiffin, and insisted upon his right to be carried as a passenger. The conductor thereupon telegraphed the "ticket receiver" (his superior officer, with authority to act for the company), and was instructed to have Lenhart pay his fare and take up the matter later with the passenger department for adjustment. Lenhart refused to pay, and the conductor said, "Then we will have to put you off." Thereupon Lenhart, under protest, left the train at Gibsonberg, a regular station. Lenhart at once went to the ticket office, and found it closed. He then came back to the conductor, called his attention to the fact that the ticket office was closed, and demanded that he be permitted to re-enter the train and ride. The conductor refused. Lenhart proceeded to Toledo, his original destination, by the next regular passenger train, paying his fare in cash. Under its assignments, the company's principal contentions are that the conductor was right in ejecting Lenhart, and that Lenhart, after seeing that the conductor would not accept mileage coupons, should have paid a cash fare, and then have sued for its recovery, if it was unlawfully exacted. Other questions are strongly urged concerning the admission of evidence, the facts in relation to which are sufficiently stated in the opinion.

Before JENKINS, GROSSCUP, and BAKER, Circuit Judges.

Geo. Willard, for plaintiff in error.

E. A. Shurburne, for defendant in error.

BAKER, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

Lenhart paid for and received a binding contract to be carried 5,000 miles if he complied with the conditions on his part. By

clause 2 he agreed not to present mileage coupons for passage on trains unless he embarked at a station where there was no ticket office, or where the ticket office was closed. On its part the company covenanted that it either would maintain a ticket office at every station, and have that ticket office open a proper length of time before each train, and ready to supply him with exchange tickets for mileage coupons, or would accept the coupons on the trains. The agent at Tiffin had inadvertently returned to headquarters his supply of exchange tickets. But for eight weeks his superior officer had failed to send them back or supply others. This is not a case where the ticket agent furnishes an intending passenger with the wrong ticket, which the passenger carelessly accepts, and then demands that the conductor shall take his explanation as paramount to the company's rules. By its contract the company had agreed that coupons should or should not be good on trains, depending on the existence or nonexistence of certain facts when the holder of the coupons duly presented them at the station. To the conductor was delegated the authority to ascertain the facts for the company. He was not a mere automaton. He was as much bound to exercise his intelligence and judgment in determining Lenhart's right to be on the train as in deciding whether money tendered him was counterfeit, or a seemingly regular ticket was forged. The company could not withdraw that authority, and command the conductor "not to accept any mileage on trains," and then justify its ejection on the ground that the conductor was simply obeying instructions. But the conductor did not rest upon his general instructions. He communicated with his superior officer, and was directed to eject Lenhart unless he paid a cash fare. The breach of the contract did not arise at Tiffin. Nothing occurred there except the establishment of the facts on which accrued Lenhart's right to have coupons accepted on the train. After Lenhart was rightfully on the train, the breach was committed. The company, therefore, is liable for ejecting Lenhart at Gibsonberg, and for refusing to permit him to re-enter the train. Railroad Co. v. Winter's Adm'r, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71; Railroad Co. v. Russ, 6 C. C. A. 597, 57 Fed. 822; Railroad Co. v. Pauson, 17 C. C. A. 287, 70 Fed. 585, 30 L. R. A. 730.

Lenhart paid for and presented a legal ticket. To the proposition that he could not stand upon his rights, but was compelled, for the sake of saving the company from the consequences of its threatened breach of contract, to pay his fare again in cash, if he had it, and then sue for its recovery, we do not yield our assent. After a breach of contract has been committed, the injured party is not allowed to aggravate his damages, and is required to use reasonable diligence to minimize them. But beforehand one is not forced to abandon his legal right under a contract, and waive the damages that may arise from its breach, in order to induce his adversary not to proceed as he wrongfully claims is his right.

Lenhart was permitted, over the company's objection, to detail occurrences between him and the ticket agent at Gibsonberg after the train from which he had been ejected had departed. Lenhart presented his mileage book to the agent and demanded an exchange

ticket. The agent had none. Lenhart then read to the agent clause 2 of the contract, and requested him to have the conductor of the next train issue an exchange ticket. The agent declined to take up the matter with the conductor. Lenhart was also allowed to testify to his differences with the conductor of the next train, how he tendered coupons and insisted upon his right to be carried, how the conductor refused to accept coupons, and demanded a cash fare, and how Lenhart paid it under protest. The transactions counted on in the declaration were complete when the first train left Gibsonberg. Lenhart's subsequent controversies with the ticket agent at Gibsonberg and with the conductor of the second train were incompetent. This evidence might have supported an action for the recovery of the cash fare paid under protest, but was utterly irrelevant to the causes of action pleaded and proven. It is impossible to determine from the record how influential this evidence was in getting the jury to return the verdict they did.

It was also prejudicial error to permit Lenhart to testify, over the company's objection, to the oral negotiations between himself and the officers of the company looking to a settlement. The ruling is sought to be upheld on the ground that the evidence tended to sustain an allegation in the declaration that the company, after full notice of the conductor's intentionally malicious acts, ratified and adopted them. But there was no evidence that the conductor acted maliciously. Lenhart himself testified that he had no reason to believe that the conductor was not acting in good faith. For what the conductor did without actual malice, and within the scope of his employment, the company was liable without notice, and subject to an action without demand. Along the same line Lenhart was permitted to introduce in evidence a series of letters between himself and officers of the company on the matter of a compromise. If this were the only error assigned, it might be doubtful, on account of the uncertainty of the record with respect to the company's objections and exceptions thereto, whether the judgment should be reversed.

Further error was committed in allowing Lenhart to give hearsay in regard to losing a sale at Toledo.

The judgment is reversed, with the direction to order a new trial.