## WALKER MFG. CO. v. KNOX.

(Circuit Court of Appeals, Sixth Circuit. April 13, 1905.)

No. 1,375.

1. CONTRACT OF EMPLOYMENT—CONSTRUCTION.

Plaintiff, on January 29, 1895, offered to assist defendant in obtaining a foreign connection for the sale of its materials to a French syndicate, and on February 4th defendant replied that it would be glad to arrange with such syndicate, and that, if plaintiff could bring about a satisfactory deal, he should be liberally paid. On February 8th plaintiff wrote defendant with reference to the matter, stating that he was at defendant's command to act on any plan defendant should suggest. Both defendant and the French syndicate, however, at this time were not ready to make new connections, and nothing was arranged until the following September 20th, when further letters passed between the parties, which resulted in the completion of negotiations. *Held*, that such facts did not establish a variance as showing a contract not made until September, instead of in February, as alleged.

2. SAME—DAMAGES—EXCESSIVENESS—APPEAL—REVIEW.

In an action to recover the reasonable value of plaintiff's services, performed at defendant's request, the excessiveness of the verdict is a question for consideration of the trial court on a motion for a new trial, and cannot be reviewed on appeal.

3. SAME—VALUE OF SERVICES—EVIDENCE.

Where defendant had agreed to pay plaintiff the reasonable value of his services, without reference to any fixed custom to pay any definite price, evidence of witnesses familiar with such services that it was usual to pay a percentage of from 2 to 5 per cent. of the value of the goods, sold as the result of the efforts of the employé, was not objectionable as failing to show that there was any fixed custom to pay a definite price.

[Ed. Note.—For cases in point, see vol. 8, Cent. Dig. Brokers, § 113.]

4. SAME.

In an action for the reasonable value of plaintiff's services it was no objection to a recovery that the witnesses disagreed as to the price usually paid for such services, the jury not being bound to find in accordance with the testimony of any of the witnesses, but entitled to exercise their own judgment on their estimate of the value of the services.

5. SAME—VALUE OF SERVICES—ESTABLISHMENT OF AMOUNT BY EMPLOYER.

Where defendant agreed to pay plaintiff the reasonable value of his services, and there was no agreement that such value should be fixed by defendant, at least until after the services had been performed, such a stipulation subsequently made was unilateral, without consideration, and not enforceable.

6. SAME—EVIDENCE.

In an action for the reasonable value of plaintiff's services, correspondence *held* insufficient to establish an agreement to accept a check for $500 in full for plaintiff's services.

7. SAME—INSTRUCTIONS.

Where, in an action for services, the court charged that the jury must find "what plaintiff did, if anything, under the contract, which induced the making of this contract," and that the burden of proof was on plaintiff to show that by his conduct subsequent thereto he did something that influenced a syndicate to enter into a subsequent contract with defendant, it was not error for the court to refuse a requested instruction that he must have rendered services for and at defendant's instance and request, and, if he did anything not done at defendant's request, but at the request of another, he could not recover.

**8. SAME.**

Where plaintiff was employed to negotiate a contract for the sale of defendant's materials to a French syndicate under a contract which did not stipulate that he was to be the sole factor in accomplishing the object sought, he was entitled to recover the reasonable value of his services, though he did not do all that was done to promote it.

**9. SAME—EVIDENCE—DECLARATIONS OF AGENTS.**

Where, in an action for plaintiff's services in promoting a foreign contract for the sale of defendant's materials, the value of materials sold was material to the question of the reasonable value of plaintiff's services, the admission of evidence of a conversation had between plaintiff and defendant's vice president during the time materials were sold under the contract, as to the amount of such sales, which conversation did not occur until after such vice president had left defendant's employ, was prejudicial error.

In Error to the Circuit Court of the United States for the Northern District of Ohio.

Cushing & Clarke, for plaintiff in error.

Hills, McGraw & Van Derveer and Thomas H. Bushnell, for defendant in error.

Before LURTON, SEVERENS, and RICHARDS, Circuit Judges.

SEVERENS, Circuit Judge. By this suit the plaintiff, Knox, sought to recover from the Walker Manufacturing Company compensation for services which he claimed to have rendered the defendant during the year 1895 under circumstances which are alleged to have been substantially as follows: The defendant was a corporation of Ohio, engaged in the manufacture and sale of electric street railway apparatus, and having its business office at Cleveland. It was desirous of introducing its apparatus into European markets. The plaintiff was an expert electrician in the employment of a street railway company of Chicago. He had at Paris a personal friend, one Le Blanc, who, in association with a French syndicate, was engaged in selling in Europe the electric street railway apparatus of another American company. In order to secure its object, the defendant, about February 5th of that year, employed the plaintiff to negotiate for the defendant with Le Blanc and his associates for the introduction into Europe of the defendant's apparatus by means of sales to be made by said syndicate, for which service the defendant agreed to pay plaintiff a reasonable compensation. The plaintiff says that he accomplished the object sought by his efforts, continued until some time in October of the same year, when he brought the French syndicate into an agreement with the defendant whereby the former became sales agents of the latter, and that said syndicate has sold in Europe more than $1,000,000 worth of the defendant's apparatus. He states that the reasonable value of his services is $100,000, of which he has been paid only $500.

By the answer and replication the following issues were developed, as stated by counsel for the plaintiff in error: (1) Whether there was such a contract; (2) whether the plaintiff rendered any service under it; (3) what was the value of the services; (4) whether the contract was void for want of consideration. The verdict rendered by the jury

solved the first, second, and fourth of these issues in favor of the plaintiff, and answered the third by assessing the value of his services at $14,760. Judgment was entered for that sum. The defendant has brought the case here, and complains of rulings of the court upon the trial, which it assigns as errors.

The defendant requested the court to instruct the jury to find a verdict for the defendant. This request was refused by the court, and the defendant excepted. Its counsel support the assignment of error thereon upon two grounds: First, that there was no such contract proven as was described in the plaintiff's petition; second, that there was no evidence upon which any measure of damages justified by law could be based. As to the first, it should be stated that the negotiations were conducted by correspondence. On the day of its date the plaintiff wrote the defendant the following letter:

"Chicago, January 29, 1895.

"Prof. Sidney F. Short, E. E. Walker Manufacturing Co., Cleveland, Ohio—Dear Sir: I write to you to know, whether your company have a representative in the European countries for the handling of your electrical apparatus. If not, will you tell me as to the probabilities of your company entertaining the idea of establishing an agency for the handling of your goods abroad. I am, and have been for some time, in close connection with representatives of a very influential street railway syndicate (both operating and constructing) with headquarters at Paris, who are making inquiries as to the merits of the different electrical systems in this country with a view of adopting one of them for the equipment of not only their own lines, but to use on installation in their construction department. As you perhaps know, electric street railway interests are looking up wonderfully in all of the European countries and from what I am able to learn, I think it is safe to predict that they will do as much work in the future toward equipping lines electrically, across the water, as we have done in the past in this country, and as far as they have gone they have used little else aside from American machinery. Knowing your make of electrical apparatus as I do, I can fully endorse it to the French Syndicate and I fully believe it would be a golden opportunity for you to widen your field in the electrical branch, in case the syndicate should decide upon your material and should you wish them to handle an agency for you.

"Yours very truly, G. W. Knox."

To this letter the defendant replied as follows:

"Cleveland, O., February 4, 1895.

"G. W. Knox, Electrician, Chicago City Railway Co., Chicago, Ill.—Dear Sir: Your letter and telegram with reference to the representation of our company in Europe were received. The writer being out of the city last week did not have an opportunity to answer these letters until to-day.

"We wired you, however, yesterday, that we would be glad to arrange with your syndicate to represent our company in Europe.

"Before the writer came into the Walker Manufacturing Co., a year ago, a contract was made with Mr. H. McL. Harding, of New York, with reference to representing the company in its sales department in certain eastern territory, and contract also covers representation in the foreign market. But matters have changed materially since that contract was made and we can undoubtedly make arrangements with your people satisfactorily, but we would have to bring Mr. Harding into consultation with us in the matter. In any event, if you can bring about a satisfactory deal for our foreign work, you shall be liberally paid for your work. If you can suggest a plan by which a meeting can be had between your parties and ourselves, we will have Mr. Harding meet with us and a suitable arrangement can undoubtedly be reached which will be advantageous to all parties concerned. Let us hear more par-

ticularly from you with reference to it, and if possible arrange details as soon as possible. We also have your letter with reference to some information regarding motors, which will be fully answered to-morrow.

"Yours respectfully,  The Walker Manufacturing Co.
"Dictated by S. H. Short."

On February 8, 1895, the plaintiff addressed a letter to the defendant, in which, after communicating certain facts in regard to his relations with Le Blanc, the desire of the French syndicate to obtain the right kind of apparatus, and its financial standing, he says:

"They have a splendid advantage in that country inasmuch as a number of members of the syndicate are closely allied with people in the street car railway fraternity, besides owning lines of their own in their country, a thing of itself of much importance. Now I shall be very glad to use all of my influence in bringing about the final closing of a deal between the syndicate and your company, and I wish to say I think it will be well to be on the alert, as Mr. Bannister of the Westinghouse Company, himself, informed me they were very anxious to treat with the French Syndicate and do business in that country, and they may yet try and meet the syndicate's request, so I am at your command to act upon any plan that you may suggest, pending Mr. Le Blanc's arrival in Paris and his perfecting the plans to go ahead with the deal. I can reach Mr. Le Blanc with cablegram upon his arrival about a week hence, so if you have any communication for the syndicate you can, if you wish, send it to me and I will forward same, or I will give you Mr. Le Blanc's address and you can deal direct with him."

And on February 13, 1895, the defendant wrote to the plaintiff a letter, in which it said:

"I wish to say to you confidentially, that we have a contract with Mr. Harding, made long since, which enables him to control the arrangement made in foreign countries. This contract will, however, expire next November, and we would like to have you advise the French Syndicate to make a temporary arrangement with Mr. Harding as he can only make an arrangement until that time, then we will make a permanent agreement directly with the French Syndicate after that date. We believe it would be best for all parties concerned, that temporary agreement of this kind should be made with Mr. Harding, and if you will take the matter up and urge Mr. Le Blanc to make the contract we will follow it up later with a permanent arrangement about the first of the year.

"Your services in this connection will be duly appreciated by this company and we will satisfactorily arrange to remunerate you for the interest you have taken in the matter."

The evidence tended to show that the plaintiff had some occasional correspondence with Le Blanc after the correspondence in February. In June the defendant wrote the plaintiff again on the subject, and, after making some suggestions about the manufacturing of motors in Paris by the French syndicate, said: "We believe that if you will take this matter up with them it might work to our mutual benefit." Not much negotiation was going on during the summer nor until September 19th, when the plaintiff sent to the defendant the following telegram:

"September 19, 1895.

"S. H. Short, Care Walker Manufacturing Co., Cleveland, Ohio: Just received following from Le Blanc. Are free from General Electric. Disposed to use Walker material. We ask European agency. Letter follows with details. Will pass order for six equipments upon receipt of cable agreement from Walker. This is important. Means immense business for you. Be on the alert, as Bannister informed me the other day he will go to Europe this month, know he is after this business. Am at your command in this matter. Wire me message to Le Blanc.  G. W. Knox."

136 F.—22

On the following day the defendant replied by letter as follows:

"September 20, 1895.

"G. W. Knox, Electrician, No. 2020 State St., Chicago, Ill.—Dear Sir: Your telegram duly received. We have wired you as per enclosed verification. We wish to take this matter up immediately and endeavor to close the contract with Mr. Le Blanc's party, which will be mutually beneficial, and we will make a very reasonable and fair arrangement. Of course, we will have to go into the matter with foreign parties very carefully, as to details of agreement to be made. We have wired Mr. Harding to meet us here Saturday or Monday with reference to this matter. We can in all probability get him to relinquish his claims to foreign territory so that we can make arrangements direct with Mr. Le Blanc at once. However, Mr. Harding's contract expires shortly so that we can make permanent arrangements at that time in any event. Some time since, you remember that I promised you that we would take care of you if you would look after this matter for us. I therefore now propose that we send you a draft for $500, retainer fee in advance for services in assisting us in carrying on negotiations for our representation in Europe, and when they are completed we will make such arrangements as will be fair for your compensation in the matter. Please let us know if this will be satisfactory.

"Yours respectfully, S. H. Short."

On September 21, 1895, the plaintiff wrote defendant that their letter of September 20th was "perfectly satisfactory," except that he preferred not to accept the $500 until after the consummation of their contract with the French company.

We have not rehearsed all the testimony bearing upon the question, but have set out the most significant part of it. The defendant's counsel points out that the contract relied upon in the petition is one made in February, and that the court held a contract was then made by the correspondence above set forth; whereas the counsel contends no contract for the employment of the plaintiff was then closed, and that, if any contract was ever made between the parties, it was later on, in September; and so that the petition is not proved. There is some slight color for this contention, but we think the more reasonable construction is that the parties intended to bargain in February for the employment of the plaintiff upon a just and reasonable compensation, and that, although his operations were suspended for several months, they were revived again in September, and resulted in accomplishing the object in view. It was the same object from first to last, and the compensation intended was the same. Plaintiff's letter of January 29, 1895, was manifestly an invitation of a proposition to employ him in bringing about such an arrangement as was mentioned in the letter. The proposal came in defendant's letter of February 4th, and the plaintiff's letter of February 8th imports an acceptance of it. The delay in the prosecution of the scheme which followed is explained by the facts that the French syndicate was under an engagement with the General Electric Company, and the Walker Manufacturing Company had a contract with Harding, which for a time stood in the way, but both of which came to an end in October of that year. Moreover, the defendant's letter of September 20th treats the promise therein made as one in continuation of that made in the earlier correspondence.

There is often some difficulty in ascertaining the terms of a contract created by informal correspondence, carried on as this was, and where one feels sure that there was in fact a mutual understanding upon which

the parties acted.    But in the present case we think the subsequent correspondence confirms the interpretation which we put upon the letters written by the parties in the early part of February.

The second ground on which the request for peremptory instructions is rested is that there was no competent proof in respect to the damages.    We premise that on this writ of error we have no power to pass upon the question whether the verdict was excessive.    That was a question to be considered by the trial court on the motion for a new trial.    We can only decide whether any error in law was committed in reaching the verdict.    This is said because counsel for plaintiff makes sore complaint of the amount awarded by the jury, and contrasts this sum with the small amount of time and effort given by the plaintiff in his endeavors in behalf of the defendant.    But, whatever we might think upon that subject, we cannot correct the verdict.    Ætna Life Insurance Co. v. Ward, 140 U. S. 76, 91, 11 Sup. Ct. 720, 35 L. Ed. 371; Erie Railroad Co. v. Winter, 143 U. S. 60, 12 Sup. Ct. 356, 36 L. Ed. 71; Lincoln v. Power, 151 U. S. 436, 14 Sup. Ct. 387, 38 L. Ed. 224.

The inquiry for us therefore is whether the court erred in its rulings in admitting testimony relative to the value of the plaintiff's services, and whether there was any testimony on that subject which could properly be regarded as a legal basis on which to estimate the value of such services.    Several witnesses were called by the plaintiff, who testified that they had more or less familiarity with the prices customarily paid for services rendered in such employment, where they had been efficient in bringing the parties together in a contract advantageous to the employer.    The testimony of these witnesses was of a similar character, and governed by the same principles.    We need not, therefore, discuss the testimony of each separately.    They testified, in substance, that it was usual to pay the party employed a percentage of from 2 to 5 per cent. of the value of the goods the sale of which was the result of the contract brought about by the efforts of the employé.    This testimony was objected to upon various grounds, the chief of which was that such evidence failed to show that there was any fixed custom to pay any definite price, as was in fact shown by the testimony of these different witnesses.    And counsel argues this question as if it were one of the existence of a custom or usage as those terms are used in technical legal parlance.    And, if the question was such, the argument would have conclusive force, for much of this testimony would have been inadmissible by that test.    But we think the question here involved was not necessarily of that character; and, if there was no settled custom, the question was in fact none other than the common one which arises in cases generally where the plaintiff seeks to recover upon a quantum meruit for services rendered.    In such cases the common course is to prove what price or sum is usually or customarily paid for services of the kind shown to have been rendered; and it is no objection to a recovery that the witnesses disagree in their evidence as to the price which is usually paid.    The testimony was admissible to show what was usually, though perhaps not universally, paid.    Besides, it is to be observed that the contract is inconsistent with the recognition by the parties of a custom which should control the price to be paid.

Their agreement was for the payment of what was reasonable. No such thing as a fixed percentage was in their minds. It would hardly be contended that in these circumstances the value of services of such character as those with which we are here concerned should be estimated by a price per diem for the time the employé was actually engaged in the service of his employer, or by any other arbitrary standard. And we hardly know how else the value of the services rendered by the plaintiff could have been proved than by substantially such testimony as was here given. Of course, the jury were not bound to find in accordance with the testimony of any of the witnesses, but, after hearing them, could exercise their own judgment, and find such verdict as, upon their estimate of the value of the evidence and their own conclusions upon all the facts, they should think right. Head v. Hargrave, 105 U. S. 45, 26 L. Ed. 1028; Pennsylvania Co. v. Scofield, 121 Fed. 814, 58 C. C. A. 176; Laflin v. Shackleford, 98 Fed. 372, 39 C. C. A. 102. We are therefore of opinion that the court did not err in refusing to regard the fact that there was no settled custom as a sufficient reason for giving the peremptory instruction requested by defendant.

It is next urged that the court erred in refusing to give the following instruction to the jury:

"It appears from the testimony introduced upon the trial of this case that the plaintiff, Knox, declared himself willing to leave the matter of compensation additional to the $500 which he admits was paid to him wholly to the discretion of the Walker Manufacturing Company, and therefore the court says to you that if you shall conclude from the evidence introduced upon this trial that the Walker Manufacturing Company acted in good faith in refusing to pay any further sum than $500, taking into consideration all the evidence introduced upon this trial, the plaintiff should not recover, and you should return a verdict in favor of the defendant."

We have already stated the substance of the agreement made before the services were performed in regard to compensation, from which it appears that the defendant would make such compensation as should be reasonable, or, as defendant wrote to plaintiff, he should be "liberally paid" for his work. After the contract between the defendant and the French syndicate was closed, whereby the services of the plaintiff were completed, the defendant wrote to plaintiff, saying: "We would like now to have from you an expression of the amount of the compensation which you think is due you for the work you have done in bringing about this agreement." To which the plaintiff on November 1st replied: "As to the compensation which you make mention of in your letter, will say I am perfectly willing to abide by whatever your company are in the practice of doing in such cases, and as they feel freely disposed." And in a later letter the defendant wrote, referring to the same subject, and inclosing a check for $500: "We hope as matters develop to send you further compensation in accordance with your letter of the 1st inst." And on a later date the plaintiff replied to this: "As to future compensation which you speak of in your letter, I wish to reiterate what I said in my former letter, 'that I am perfectly satisfied to let the matter rest with your company as will feel at all times that it will do the right thing by

me as you have already so handsomely done.'" Subsequently the defendant refused to pay more than the $500, claiming that it had then learned that plaintiff had been acting in the transaction as the agent of Le Blanc. Counsel for defendant relies upon the rule stated in Mechem on Agency, § 604, as follows:

"It is competent for the parties to agree that the compensation shall be such an amount as the principal may fix. Thus, if the agent agree to serve for such compensation as the principal shall at the termination of the agency determine to be right and proper under all the circumstances, the amount so fixed by the principal, if he acts honestly and in good faith, is conclusive, although as a matter of fact it be less than the services were really worth. Agreements of this sort, however, must be clear, and appear to have been fairly made."

But this rule is stated as applicable to a stipulation of a contract made before the service is performed and upon the faith of which the employment is given and the work done, and not when the service has been performed under a contract for reasonable compensation, and the liability to pay has become fixed. Such a stipulation on the part of the plaintiff at that time would have been unilateral, and without consideration. It would, for nothing, have entirely discharged the tie of the defendant's obligation. But if this were otherwise, when the defendant paid the $500 and the plaintiff accepted it, it is evident that that was not intended as the limit, but that there was to be "future compensation." We think there is nothing in this ground to support the contention that the court should have given the peremptory instruction requested by defendant.

The defendant also requested the court to instruct the jury as follows:

"Before the plaintiff can be entitled to your verdict in any amount in this case, you must find by a preponderance of the testimony introduced that he rendered the services which he claims in his petition to have rendered for, and at the instance and request of, the defendant, the Walker Manufacturing Company. If, therefore, you find from the testimony introduced upon this trial that whatever the plaintiff did, if he did anything, in the way of bringing about the contract of the defendant with Le Blanc and others of October, 1895, was done not at the request and for the benefit of the defendant, but for and at the request of Le Blanc, the plaintiff would not be entitled to your verdict in this case, and you should return a verdict in favor of the defendant."

This, in its terms, was refused, and the defendant excepted. But the court instructed the jury that they "must find what the plaintiff did, if anything, under this contract, which induced the making of this contract. The burden of proof is upon the plaintiff to show that by his conduct subsequent to the 4th of February, or subsequent to his letter of the 8th of February, which made the contract, he did something that influenced the French syndicate to enter into the contract that was subsequently made." And the verdict was for the plaintiff, which could not have been if the jury had not found that what he did was under the contract with defendant, and that he had done something which influenced the French syndicate to enter into the contract. Le Blanc was one of the syndicate, and therefore identified with it in what he said

and did. There is really nothing in the record which would have justified a finding that the plaintiff was not acting consistently with his duty to the defendant, or that he was in the employment of the other party. We think the instruction of the court upon this subject was all that was required by the evidence, and that there was no error in refusing the particular instruction asked.

Again, it is assigned as error that the court instructed the jury thus:

"It is not necessary, however, for the plaintiff to prove that the influence exerted by him was the sole influence, but it is necessary for him to show that by reason of something that he did an influence was brought to bear upon the French syndicate, or upon their representative, which in whole or in part induced the making of the contract which was entered into between the Walker Manufacturing Company and Le Blanc and his associates."

But we see no objection to this. He was entitled to be paid for what he did in bringing about the contract of the parties. If he did not do all that was done to promote it, it might be that he should not recover so much as if he had. It would be a matter for consideration in settling the value of his services. The contract of his employment did not stipulate that he should be the sole factor in accomplishing the object sought. On the contrary, it would seem that it would naturally follow that influences which he might reach would contribute to the result. This assignment of error is not sustained.

Several other exceptions upon points of minor importance are discussed in the briefs. We have considered them all, but, except as they are involved in what has already been said, they do not require discussion. We find no error in the rulings to which these exceptions apply.

There is, however, another assignment of error which is insurmountable. The plaintiff was a witness in his own behalf. In rebuttal, his attention was called to a conversation which he had at Niagara Falls in the autumn of 1897 with Mr. Short, who was vice president and electrical engineer of the defendant during the year 1895. The defendant sold out its plant and business to another company on January 1, 1896, and at that time Short's employment by, and position in, the defendant company terminated. Over the objection of the defendant, the plaintiff was permitted to testify as follows:

"It was in the fall of 1897, at the International Hotel at Niagara Falls, I met Mr. Short. I asked him about the foreign business with Le Blanc. He said it had been very satisfactory. I asked him if it hadn't amounted to more than they expected. He said, 'Yes, it has.' I then said, 'It has amounted to perhaps a million or a million and a half, hasn't it?' His reply was, 'Yes,' it was better than that, running between one million and a half and a million and three-quarters in sales."

The ground of objection was that it was not competent to prejudice the right of the defendant by statements of Short at the time referred to. Clearly, the objection was well taken. The transaction was ended, and Short's relation to the company had long since ceased. He had no authority, at the time of this interview, to transact business for, or to make statements which should

affect, the company. Vicksburg & M. Railroad v. O'Brien, 119 U. S. 99, 7 Sup. Ct. 118, 30 L. Ed. 299; Goetz v. Bank of Kansas City, 119 U. S. 551, 7 Sup. Ct. 318, 30 L. Ed. 515; Central Electric Co. v. Sprague Electric Co., 120 Fed. 925, 57 C. C. A. 197; 1 Greenleaf on Evidence, § 113. His statement related to a very material subject. The amount of the sales which had been effected by the contract of the defendant with the French syndicate was claimed by the plaintiff to be—as, indeed, it was—an important factor in estimating the value of the plaintiff's service. In fact, much of the testimony upon this subject of his expert witnesses to which we have already referred was given in answer to hypothetical questions which included it as a factor. And it rather aggravates the prejudice which might occur from the ruling, though, perhaps, it does not essentially affect the point for decision, that Short was dead at the time of the trial.

The result is that for this error the judgment must be reversed, with costs, and the cause remanded, with a direction to award a new trial.