Spear, J.
The evidence given at the trial proves, or tends to prove, a state of facts in substance as to the material parts thereof, as follows: On the 22d day of July, 1903, Mrs. Amos purchased of the agent of The Norfolk & Western Railway Company, at the place of her residence, Ironton, Ohio, two tickets known as summer tourist tickets, good from Ironton b)^ way of Cincinnati and Toledo to Alma, Michigan, the route being from Ironton to Cincinnati via the Norfolk & Western, thence via the Cincinnati, Hamilton & Dayton to Toledo, and from Toledo to Alma over the road of the Ann Arbor. Each was good for one first-class passage to Alma and return by the same route. One ticket was for Mrs. Amos herself and the other for her son Richard, a youth of twelve years. The tickets were signed by the ticket agent as such and by the mother and son respectively as purchasers. Attached to each were three coupons; one for passage from Ironton to Cincinnati, one for an exchange ticket to Alma, Michigan, and return, and a return coupon from Cincinnati to Ironton. The tickets were dated July 22d and contained the words “Alma, Michigan, and return.” They called for an exchange at Cincinnati of coupons by the Cincinnati, Hamilton & Dayton over that road, and over the Ann Arbor. On the morning of the 23d July Mrs. Amos and her. son went to the depot of the Cin *305 cinnati, Hamilton & Dayton road, at Cincinnati, and there presented to the ticket agent their tickets for the proper exchange. The agent, after much delay, tendered them tickets for each to sign respectively as purchasers, and they were hurriedly signed. At the top of the boy’s ticket were the words: “Cincinnati, Hamilton & Dayton Ry. Co. Tourist’s Special Ticket. Good for one first-class passage for one person and one hundred and fifty pounds of personal baggage to the value of $100 and no more, to Alma, Michigan, and return when officially stamped on back hereof and presented with coupons attached. Exchanged.”
The other ticket contained at the same place upon it the same words except that Ann Arbor, Michigan, was written in place of Alma, Michigan. The coupon attached to the Cincinnati, Hamilton & Dayton tickets, instead of being made to read to Alma, Michigan, were written to read to Ann Arbor, Michigan, which is a station on the Ann Arbor railroad some fifty miles from Toledo. All four tickets were handed by the agent to Mrs. Amos, folded in an envelope. Each of the Ironton tickets, when they returned, had pasted at the bottom the Norfolk & Western coupon good for return passage from Cincinnati to Ironton. Mrs. Amos was not aware of the agent’s blunder and did not suspect it. The delay of the agent in writing up the exchanged tickets gave her only time to reach the train, and left no time for an examination of the tickets had she desired to do so. She had to run to catch the train. In fact she did not examine them. Whether or not she would have discovered the blunder of *306 the agent in filling up the coupons and one of the tickets, had she examined them, is matter of conjecture. The Cincinnati, Hamilton & Dayton train reached Toledo in the afternoon of the 23d, and Mrs. Amos and her son at once took the Ann Arbor train for their destination, Alma. The train passed Ann Arbor at five o’clock in the afternoon. Shortly after the train left that station the conductor approached Mrs. Amos and inquired why she had not got off at Ann Arbor. She explained that her destination was Alma, and then exhibited all four of her tickets, as well as those issued by the Norfolk & Western as those issued by the Cincinnati, Hamilton & Dayton. He took all four tickets, saying he would telegraph back and see what he could do about the tickets. Later he told her he had so telegraphed and had heard from their agent and he wanted him to collect two fares. She declined to pay, insisting that the tickets showed that fare had been paid to Alma, and that was the fact. The conductor came several times and demanded payment of fares from Ann Arbor to Alma. Finally he told her he was about tired of fooling with her and if she didn’t pay for both they would have to get off. She tendered him one full fare for herself and half fare for the boy. He did not accept either. Fie again told her they would have to get off. She answered: “If I get off you will have to put me off.” He replied: “Well, I can do that.” By this time the train had reached Bannister, a small place a few miles from Alma. Flere the train was stopped, after it had been started, and she was put off onto the ground, there being no platform there. She testifies that *307 the conductor and brakeman lifted her out o'f the seat and dragged her backward out of the train. To some extent this description of the incident is corroborated by others of the passengers. The conductor’s manner was somewhat gruff, and that of the woman as a person intimidated. There were from fifteen to twenty passengers on the car at the time, and there was a good deal of excitement in the car among the passengers caused by the- incidents respecting the difference between the conductor and Mrs. Amos. The occurrence took place about nine o’clock at night. It was very dark. Mrs. Amos and her son found a place to stay over night at the village near by and the next day went on to Alma by train, paying their fare. She w-as going to Alma to be treated for bronchitis. After this occurrence she was rendered worse, became nervous, being afflicted with nervous headaches and violent coughing spells. In general her health was impaired from some cause.
In fact the conductor did telegraph the general passenger agent’s office at Toledo, and in return that office telegraphed the Cincinnati, Hamilton & Dayton road asking if there was an error in issuing of the tickets. No reply was received, and the direction to the conductor followed.
The agent of the Norfolk & Western road at Ironton had authority to issue the tickets as they were issued, and in that respect represented the Cincinnati, Hamilton & Dayton road and the Ann Arbor. The same is true with respect to the Cincinnati, Hamilton & Dayton agent having authority to issue tickets over the Ann Arbor road.
*308 From the foregoing array of facts certain conclusions seem to follow inevitably. The tickets issued by the agent of the Norfolk & Western road, who, as found, was also the agent of the Ann Arbor, abundantly show that the passengers had paid full fare for passage from Ironton to Alma. This ought to be clear to a person of ordinary intelligence, and ought to have been clear to the conductor, especially when there was added the full and reasonable explanation given by the woman herself. Taking the four tickets all together it was made clear that the only difficulty in the matter was caused by the carelessness and inexcusable blunder of the Cincinnati, Hamilton & Dayton agent at Cincinnati, acting also for the Ann Arbor Company, a blunder for which Mrs. Amos was in no way responsible. And even were the question presented one between the conductor and the passenger, where the somewhat rigid rule that, as between the conductor and the passenger the latter must produce a ticket apparently good on its face or pay fare, is applicable, it would seem that the conductor had in this instance made a palpable mistake. But the question presented by the record is not between the conductor and the passenger, but is between the Company itself and the passenger, for, when the conductor apprised the proper office of his dilemma and acted upon the instructions from that office, the responsibility was then upon the Company. Nor did the futile effort to get information from the company at whose ticket office the blunder was made relieve the Ann Arbor Company. The general passenger agent had nearly four hours in *309 which to acquaint himself with any information or explanation possessed by the Cincinnati office, with telegraph and telephone lines at his command, and yet seems simply to have sent an inquiry by a telegraphic message. It was his duty to his own road to use due diligence in ascertaining the cause of the blunder, but it was his duty to the passenger as well as to his employer to act promptly and effectively to ascertain the facts and decide intelligently. He seems to have done neither. Sufficient facts were before him. They justified but one conclusion. He reached the opposite conclusion, and hence the trouble. Both tickets of the son, as well that issued to him at Cincinnati as the one issued at Ironton, in terms at the head of each showed that he was entitled to a first-class passage to Alma. The tickets issued to the mother, when taken together, would seem to indicate a like right of passage, especially when we apply the rule, well established we think, that in construing a contract of this character language of doubtful meaning should be taken in its strongest sense against the company. But, if any question remained as to that, the tender of fare from Ann Arbor to Alma by the mother fully relieved the ■situation of any doubt as to her, and as result it was thus clearly shown that both were entitled to be carried from Ann Arbor to Alma without farther payment of fare.
Some claim is made-that Mrs. Amos was herself guilty of negligence in not examining the tickets, ascertaining the blunders, and seeking correction. This objection lacks substance. At *310 Cincinnati, where the blunders were committed, she had no opportunity; but aside from that it would not, we think, be reasonable to demand that a passenger on a railroad train especially a woman, shall at the peril of being ejected, first suspect that the ticket agent has blundered in the discharge of his duty, and then, still at her peril, study the ticket to ascertain whether or not, as matter of fact, the ticket issued to her is incorrect and insufficient to entitle her to passage to her destination. Passengers on railroad trains are not in general presumed to know the rules and regulations of the company made for the guidance of its conductors, and it cannot be regarded as negligence for a woman to fail to realize that a conductor might not be the proper person to correct a blunder made by a ticket agent of the road should she discover it. These long drawn out special tourist tickets are not simple. On the contrary they are involved. Each one of these tickets contained eleven printed paragraphs expressing conditions relating to passengers and to baggage, in fine type, surrounded on either side by names of the months of the year, and by figures giving dates to be punched out to conform to date of issue when needed. A mistake in judgment might easily happen in an effort to fully understand them, and a right to ride by a woman who has paid fare should not be made to depend upon a correct solution by her of a somewhat confusing puzzle. Mrs. Amos had done all that, under the circumstances, could reasonably be expected of her. She was, therefore, entitled to the benefit of the principle (N. Y., *311 L. E. & W. Rd. Co. v. Winter, 143 U. S., 60) that “where a party does all that he is required to do under the terms of a contract into which he has entered, and is only prevented from reaping the benefit of such contract by the fault or wrongful act of the other party to it, the law gives him a remedy against the other party for such breach of contract.”
By the undisputed evidence, therefore, this party was entitled to recover damages, and it was not error for the court to so instruct the jury. And the expulsion being wrongful, and to some extent at least rough and forcible, the assault committed on a woman in the presence of a score of people, it was not error in the court to further instruct the jury that in addition to compensatory damages, they might, taking into account the circumstances, if they found the assault to have been wanton, malicious, or committed in a rude and insulting manner, evincing an intention to wound and injure plaintiff’s feelings, to bring her into contempt or disgrace, go farther and award punitive damages. The case made by plaintiff we think fully justified the judgment. If the evidence in the case does not show just such a condition as was provided for in the above charge it would be difficult to imagine a scene in a railroad train which would.
A number of points are made by counsel for plaintiff in error specially bearing upon the charge. All have been considered. We do not deem it necessary to review them in detail. As herein-before stated, we are of opinion that the charge *312 was justified by the evidence, and find no error in the refusals to charge.
Several decisions of the supreme court of Michigan are called to our attention. The claim is made that the law of that state as thus declared, requires a reversal of this judgment. We do not think so. None of the decisions thus cited involves a question between the company and the passenger; all arose wholly between the conductor and the passenger, and the law of that court, as declared in these decisions, applies to such situations only. Nor are the facts in any of those cases parallel with the facts in this case. The case approaching nearest to it is Zagelmeyer v. Railroad, Co., 102 Mich., 214, where it is held that a passenger who either produces a ticket which, as between the conductor and himself, entitles him to passage, or stands ready to pay the fare legally demanded, can recover substantial damages for being ejected from the car on his refusal to pay an unauthorized demand. The case in the opinion is distinguished from various earlier Michigan cases cited because in such earlier cases the party had no ticket which, as between himself and the conductor, entitled him to ride, and in which there was no tender of legal fare. We think there is little comfort for plaintiff in error in the Michigan cases when analyzed and understood.
No useful purpose would be served by going more into detail as to the circumstances of the case or the assignments of error. All assignments are virtually disposed of by what precedes. We think the charge of the court was correct and *313 the instructions requested properly refused. In short we find no error in the re'cord. The judgments below will be

Affirmed.

Davis, C. J., Shauck, Price, Johnson and Donahue, JJ., concur.